Olivia R. Beale (SBN 364820)
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Tel: (713) 352-1100
Fax: (713) 352-3300
obeale@mybackwages.com

*Counsel for Bodnar & the Hourly Employees*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**TAMARA BODNAR**, Individually and for Others Similarly Situated,

Plaintiff,

v.

**SECURESPACE MANAGEMENT LLC d/b/a SECURESPACE SELF STORAGE**, a Delaware limited liability company, and **DOES 1-10**, inclusive,

Defendant.

**Case No. 26-3186**

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**

(1) Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*);
(2) Failure to Pay Overtime Under the Washington Minimum Wage Act (RCW 49.46, *et seq.*);
(3) Willfully Withholding Earned Wages (RCW 49.52, *et seq.*);
(4) Failure to Provide *Bona Fide* Rest Periods (RCW 49.12, *et seq.*; WAC 296-126-092).

**DEMAND FOR JURY TRIAL**

## Summary

1. Tamara Bodnar (Bodnar) brings this class and collective action to recover unpaid wages and other damages from SecureSpace Management LLC d/b/a SecureSpace Self Storage (SecureSpace).

2. SecureSpace employed Bodnar as one of its Hourly Employees (defined below).

3. SecureSpace paid Bodnar and the other Hourly Employees by the hour.

4. Bodnar and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. However, Bodnar and other Hourly Employees do not receive *bona fide* rest periods.

6. Instead, SecureSpace requires Bodnar and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "rest periods" (SecureSpace's "rest period policy").

7. SecureSpace's failure to provide Bodnar and other Hourly Employees with compliant, *bona fide* rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor & Industries (L&I) regulations.

8. Additionally, SecureSpace pays Bodnar and the other Hourly Employees non-discretionary bonuses, including incentive bonuses, occupancy bonuses, retention bonuses, and sign-on bonuses, that it excludes from their regular rates of pay for overtime purposes (SecureSpace's "bonus pay scheme").

9. SecureSpace's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Bodnar and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

10. SecureSpace's bonus pay scheme and rest period policy violate the Fair Washington Minimum Wage Act (WMWA) by depriving Bodnar and the other Hourly Employees of earned wages for all hours worked, including overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

11. Likewise, as a result of its rest period policy and bonus pay scheme, SecureSpace willfully withholds earned wages from Bodnar and the other Hourly Employees in violation of the Washington Wage Rebate Act (WWRA).

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over SecureSpace because it maintains its principal place of business in Santa Monica, California.

15. Venue is proper because SecureSpace maintains its principal place in Los Angeles County, which is located in this district and division. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

16. SecureSpace employed Bodnar as a manager from approximately February 2024 through November 2025.

17. Throughout her employment, SecureSpace classified Bodnar as non-exempt and paid her by the hour.

18. Throughout her employment, SecureSpace subjected Bodnar to its rest period policy and bonus pay scheme.

19. Bodnar brings this action on behalf of herself and similarly situated hourly SecureSpace employees.

20. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees paid under SecureSpace's bonus pay scheme at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members")**

21. Bodnar also seeks to represent a class under Washington law pursuant to FED. R. CIV. P. 23.

22. The putative Washington class of similarly situated employees is defined as:

> **All hourly employees in Washington who SecureSpace employed under its rest period policy and/or bonus pay scheme during the past 3 years through final resolution of this action (the "Washington Class Members")**

23. The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

24. SecureSpace is a Delaware limited liability company with its principal place of business in Santa Monica, California.

25. SecureSpace can be served through its registered agent: **CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203**.

26. Each of the fictitiously named defendants participated in the acts alleged in this Complaint.

27. The true names and capacities of the defendants named as DOES 1 through 10, inclusive, are presently unknown to Bodnar.

28. Bodnar will amend this Complaint, setting forth the true names and capacities of these fictitiously named defendants when their true names are ascertained.

29. Bodnar is informed and believes, and on that basis alleges, that each of the fictitious defendant(s) have participated in the acts alleged in this Complaint.

## FLSA COVERAGE

30. At all relevant times, SecureSpace was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, SecureSpace was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, SecureSpace was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, pens, pencils, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33. At all relevant times, SecureSpace had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34. At all relevant times, Bodnar and the other Hourly Employees were SecureSpace's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35. At all relevant times, Bodnar and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

36. SecureSpace bills itself as "one of the fastest growing Self Storage platforms in the USA with assets located primarily in high-density, urban markets."[1]

37. To meet its business objectives, SecureSpace employs workers, including Bodnar and the other Hourly Employees, to provide customer service.

38. For example, SecureSpace employed Bodnar as a manager from approximately February 2024 through November 2025 in Tacoma, Washington.

39. Bodnar's job duties included general customer service duties, cleaning storage units, communicating with clients, generating new leases, and collecting rent.

40. Throughout her employment, Bodnar regularly worked more than 40 hours a workweek.

[1] https://securespace.com/company/our-mission (last visited March 17, 2026).

41. Indeed, Bodnar typically worked approximately 9 to 10 hours a day and 5 days a week (45 to 50 hours a workweek) "on the clock."

42. Bodnar worked more than 40 hours in nearly every workweek she worked her full schedule.

43. SecureSpace paid Bodnar approximately $22.77 an hour.

44. Bodnar reported her "on the clock" hours to SecureSpace through its timekeeping system.

45. SecureSpace's records reflect the hours Bodnar worked each week "on the clock."

46. Likewise, the other Hourly Employees typically work approximately 9 to 10 hours a day and 5 days a week (45 to 50 hours a workweek) "on the clock."

47. SecureSpace subjects Bodnar and the other Hourly Employees to common policies based on common systems and methods it selects and controls.

48. SecureSpace requires Bodnar and the other Hourly Employees to abide by common work, time, pay, rest period, and overtime policies and procedures.

49. But SecureSpace imposes its rest period policy on Bodnar and other Hourly Employees.

50. Specifically, SecureSpace requires these employees to continue performing their normal job duties, such as preparing for and responding to phone calls and other client communications and reqeusts, as well as documenting rent payments, generating new leases, and preparing and maintaining storage units and does not fully relieve them of all work duties during so-called "rest periods."

51. Bodnar and the other Hourly Employees do not actually receive *bona fide* uninterrupted 10-minute rest periods for every 4 hours worked or major fraction thereof.

52. SecureSpace requires them to continue performing their normal job duties and does not fully relieve them of work duties during so-called "rest periods."

53. SecureSpace's failure to provide Bodnar and the other Hourly Employees with compliant, *bona fide* rest periods violates the WIWA and related L&I regulations.

54. Additionally, SecureSpace subjects Bodnar and the other Hourly Employees to its bonus pay scheme.

55. Specifically, SecureSpace agrees to pay and subsequently pays Bodnar and the other Hourly Employees non-discretionary bonuses, including incentive bonuses, occupancy bonuses, retention bonuses, and sign-on bonuses, based on fulfillment of its criteria.

56. But SecureSpace excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes during workweeks they earn the bonuses and work more than 40 hours.

57. For example, SecureSpace paid Bodnar incentive and occupancy bonuses based on achieving good reviews and sufficient storage unit occupancy levels, as determined by SecureSpace, but failed to include these bonuses in calculating her regular rate of pay during workweeks she earned the bonuses and worked more than 40 hours.

58. Thus, SecureSpace fails to pay Bodnar and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek in violation of the FLSA and Washington law.

59. Under its rest period policy and bonus pay scheme, SecureSpace willfully withholds earned wages, including overtime wages, from Bodnar and its other Hourly Employees, in violation of the WWRA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

60. Bodnar brings her claims as a class and collective action under Section 216(b) of the FLSA and as a class action pursuant to FED. R. CIV. P. 23 on behalf of herself and the other Hourly Employees.

61. Like Bodnar, the other Hourly Employees are victimized by SecureSpace's rest period policy and/or bonus pay scheme.

62. Other Hourly Employees worked with Bodnar and indicated they were paid in the same or similar manner, performed similar work, and were subject to SecureSpace's rest period policy and/or bonus pay scheme.

63. Based on her experience, Bodnar is aware SecureSpace's rest period policy and bonus pay scheme were imposed on other Hourly Employees.

64. The Hourly Employees are similarly situated in the most relevant respects.

65. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages, overtime wages, and *bona fide* rest periods.

66. Specific job titles or job locations of the other Hourly Employees do not prevent class or collective treatment.

67. Rather, SecureSpace's rest period policy and bonus pay scheme render Bodnar and the other Hourly Employees similarly situated for the purpose of determining the right to overtime wages, earned wages, and required rest periods.

68. SecureSpace's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

69. The back wages owed to Bodnar and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

70. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SecureSpace's records, and there is no detraction from the common nucleus of liability facts.

71. Therefore, the issue of damages does not preclude class or collective treatment.

72. Bodnar's experiences are typical of the experiences of the other Hourly Employees.

73. Bodnar has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

74. Like each Hourly Employee, Bodnar has an interest in obtaining the unpaid wages owed under federal and Washington law.

75. Bodnar and her counsel will fairly and adequately protect the interests of the other Hourly Employees.

76. Bodnar retained counsel with significant experience in handling complex class and collective action litigation.

77. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and SecureSpace will reap the unjust benefits of violating the FLSA and Washington law.

78. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

79. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and SecureSpace.

80. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

81. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

82. Among the common questions of law and fact are:

a. Whether SecureSpace engaged in a policy and practice of requiring its Hourly Employees to perform their typical job duties during so-called "rest periods";

b. Whether SecureSpace failed to provide its Hourly Employees with *bona fide* rest periods in violation of the WIWA and related Washington L&I regulations;

c. Whether SecureSpace paid the Hourly Employees non-discretionary bonuses that it failed to include in their regular rates of pay;

d. Whether SecureSpace failed to pay its Hourly Employees overtime at rates of at least 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 40 in a workweek in violation of the FLSA and WMWA;

e. Whether SecureSpace willfully withheld earned wages from its Hourly Employees in violation of the WWRA;

f. Whether SecureSpace's decision not to pay Bodnar and the other Hourly Employees overtime wages at the required rate for all overtime hours was made in good faith;

g. Whether SecureSpace's decision to withhold earned wages from its Hourly Employees was made in good faith; and

h. Whether SecureSpace's violations were willful.

83. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

84. The Hourly Employees are known to SecureSpace, are readily identifiable, and can be located through SecureSpace's business and personnel records.

## SecureSpace's Violations Were Willful

85. SecureSpace knew it employed Bodnar and the other Hourly Employees.

86. SecureSpace knew it was subject to the FLSA's and WMWA's overtime provisions.

87. SecureSpace knew the FLSA required it to pay non-exempt employees, including Bodnar and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

88. SecureSpace knew Bodnar and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via SecureSpace's timekeeping system.

89. SecureSpace knew Bodnar and each Hourly Employee were non-exempt employees entitled to overtime pay.

90. SecureSpace knew the WIWA and the Washington L&I regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free 10-minute rest period for every 4 hours worked.

91. And SecureSpace knew that it paid the Hourly Employees non-discretionary bonuses.

92. And SecureSpace knew it was required to, but did not, include this compensation in their regular rates of pay for overtime purposes.

93. SecureSpace's failure to pay Bodnar and the other Hourly Employees overtime at the required rates for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

94. SecureSpace knowingly, willfully, and/or in reckless disregard of the FLSA and WMWA carried out its unlawful bonus pay scheme that deprived Bodnar and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

95. Bodnar brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

96. SecureSpace violated, and is violating, the FLSA by employing non-exempt employees (the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek.

97. SecureSpace's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

98. Accordingly, SecureSpace owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

99. Because SecureSpace knew or showed reckless disregard for whether its actions violated the FLSA, SecureSpace owes the FLSA Collective Members these wages for at least the past 3 years.

100. SecureSpace is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

101. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME UNDER THE WMWA
## (WASHINGTON CLASS)

102. Bodnar brings her WMWA claim as a class action on behalf of herself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

103. SecureSpace's conduct violates the WMWA. RCW 49.46, *et seq*.

104. At all relevant times, SecureSpace was subject to the WMWA because SecureSpace was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

105. At all relevant times, SecureSpace employed the Washington Class Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).

106. The WMWA requires employers, like SecureSpace, to pay non-exempt employees, including the Washington Class Members, overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.

107. The Washington Class Members are entitled to overtime pay under the WMWA.

108. SecureSpace violated, and is violating, the WMWA by failing to pay non-exempt employees (the Washington Class Members) overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock." *See* RCW 49.46.130; *see also* RCW 49.46.090.

109. SecureSpace's unlawful conduct harmed the Washington Class Members by depriving them of the overtime wages they are owed under Washington law.

110. Accordingly, SecureSpace owes the Washington Class Members the difference between the wages paid and the proper overtime wages earned under RCW 49.46.090 plus pre-judgment interest at a rate of 12% per annum. *See* RCW 49.46.090 *and* RCW 19.52.020

111. Finally, Bodnar and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## Count III
## Willfully Withholding Earned Wages Under the WWRA (Washington Class)

112. Bodnar brings her WWRA claim as a class action on behalf of herself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

113. SecureSpace's conduct violates the WWRA RCW 49.52, *et seq*.

114. At all relevant times, SecureSpace was subject to the WWRA because SecureSpace was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

115. At all relevant times, SecureSpace employed Bodnar and the other Washington Class Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

116. The WWRA prohibits employers, like SecureSpace, from depriving employees, including Bodnar and the other Washington Class Members, of "any part of his or her wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

117. SecureSpace violated, and is violating, the WWRA by willfully withholding earned wages from Bodnar and the other Washington Class Members for the hours they worked during their on-duty "rest periods," which SecureSpace was obligated to pay under Washington law (*e.g.*, the WMWA). *See* RCW 49.52.050.

118. SecureSpace also violated, and is violating, the WWRA by willfully withholding earned overtime wages from Bodnar and the other Washington Class Members, which federal and Washington law (*i.e.*, the FLSA and the WMWA) obligated SecureSpace to pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* RCW 49.52.050.

119. SecureSpace's unlawful conduct harmed Bodnar and the other Washington Class Members by willfully withholding earned wages (including earned overtime wages at the proper premium rate) from these employees which they are owed under Washington law.

120. Accordingly, SecureSpace owes Bodnar and the other Washington Class Members their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages RCW 49.52.070.

121. Finally, Bodnar and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

## COUNT IV
## FAILURE TO PROVIDE *BONA FIDE* REST PERIODS UNDER THE WIWA
## (WASHINGTON CLASS)

122. Bodnar brings her rest period claims under the WIWA and related Washington L&I regulations as a class action on behalf of herself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

123. SecureSpace's conduct violates the WIWA's and related L&I regulations' rest period requirements RCW 49.12, *et seq*.; WAC 296-126-092.

124. At all relevant times, SecureSpace was subject to the WIWA and related L&I regulations because SecureSpace was (and is) an "employer" within the meaning of the WIWA and the L&I regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

125. At all relevant times, SecureSpace employed the Washington Class Members as covered "employees" within the meaning of the WIWA and the Washington L&I regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

126. The WIWA prohibits employers, like SecureSpace, from employing employees, including the Washington Class Members, under conditions of labor detrimental to their health. RCW 49.12.020.

127. And the L&I regulations require employers, like SecureSpace, to provide employees, including the Washington Class Members, rest periods of at least 10 minutes "on … [SecureSpace's] time, for each four hours of working time" or major fraction thereof. WAC 296-126-092.

128. Washington law also requires employers, like SecureSpace, to compensate employees, including the Washington Class Members, for missed rest periods. *See, e.g.*, *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418 (2024), *review denied*, 4 Wn. 3d 1007 (2025); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn. 2d 507 (2018); *Pellino v. Brinks Inc.*, 164 Wn. App. 668 (2011).

129. Throughout the relevant period, SecureSpace expected and required the Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during "rest periods."

130. The Washington Class Members were not relieved of all duties during any attempted rest periods but instead were subject to constant work interruptions.

131. Thus, SecureSpace violated, and is violating, the WIWA and related L&I regulations by failing to provide the Washington Class Members *bona fide* rest periods. *See* RCW 49.12.020; WAC 296-126-092.

132. SecureSpace's unlawful conduct harmed the Washington Class Members by depriving them of the *bona fide* rest periods they are owed under Washington law.

133. Accordingly, Bodnar and the Washington Class Members are entitled to recover their unpaid wages for their missed rest periods, penalty wages, and pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

134. Finally, Bodnar and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. See RCW 49.12.150.

## JURY DEMAND

135. Bodnar demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Bodnar, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b) An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

(c) An Order appointing Bodnar and her counsel to represent the interests of the Hourly Employees;

(d) An Order finding SecureSpace liable to Bodnar and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

(e) An Order finding SecureSpace liable to Bodnar and the other Washington Class Members for failing to provide them with *bona fide* rest periods plus all available statutory penalties;

(f) An Order finding SecureSpace liable to Bodnar and the other Washington Class Members for all unpaid overtime wages owed under the WMWA;

(g) An Order finding SecureSpace liable to Bodnar and the other Washington Class Members for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

(h) A Judgment against SecureSpace awarding Bodnar and the other Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

(i) An award of interest on all amounts at the highest rate allowable by law;

(j) An Order awarding attorney's fees, costs, and expenses; and

(k) All such other and further relief as may be necessary and appropriate.

!

Date: March 25, 2026

Respectfully submitted,

*/s/ Olivia R. Beale*
Olivia R. Beale
**JOSEPHSON DUNLAP LLP**
*Counsel for Bodnar & the Hourly Employees*

## DEMAND FOR JURY TRIAL

Bodnar hereby demands a jury trial on all claims and issues, as he and the other Hourly Employees are entitled to a jury.

Date: March 25, 2026

Respectfully submitted,

*/s/ Olivia R. Beale*
Olivia R. Beale
**JOSEPHSON DUNLAP LLP**
*Counsel for Bodnar & the Hourly Employees*